UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

KEYLAND DUNNING,

        Plaintiff,

v.

KALAMAZOO DEPARTMENT OF
PUBLIC SAFETY et al.,

        Defendants.
_____/

Case No. 1:25-cv-1104

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action pursuant to 42 U.S.C. § 1983. The initial complaint (ECF No. 1) was filed by twenty detainees at the Kalamazoo County Jail in Kalamazoo, Michigan. In an order (ECF No. 4) entered on September 15, 2025, the Court directed that the claims of each Plaintiff be severed into separate actions and that each Plaintiff file an amended complaint in his respective action. The above-captioned action is the result of that severance. The Court received Plaintiff's amended complaint (ECF No. 6) on October 9, 2025. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* amended complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying

these standards, the Court will dismiss Plaintiff's amended complaint as duplicative and, therefore, malicious.

## Discussion

### I.  Factual Allegations

Plaintiff is presently detained at the Kalamazoo County Jail, which is where the events about which he complains occurred. Plaintiff sues the following entities and individuals in their official capacities: the Kalamazoo Department of Public Safety; the Kalamazoo Defenders; Officers Dan Boglitsch, Travis Cutler, and Unknown Baldwin; Prosecuting Attorney Jeffery Getting; attorneys Scott Wagenaar and M. Zoe Hutchins; and MLive Media Group and its employee, Brad Devereaux. (Am. Compl., ECF No. 6, PageID.36–37.) Plaintiff also sues notary Tyler Caldwell in his personal capacity. (*Id.*, PageID.36.)

As noted above, this action was initiated when twenty detainees at the Kalamazoo County Jail filed a complaint against the jail itself and the Kalamazoo County Sheriff's Department. (Compl., ECF No. 1.) Detainee Ray Evans was the lead plaintiff. That complaint set forth the following allegations:

> From my proof of incarceration form I was held on May 16, 2023—May 17, 2023[;] June 26, 2024—July 8, 2024[;] August 20, 2024—September 18, 2024[;] October 5, 2024—October 7, 2024[;] October 20, 2024—October 22, 2024[;] January 17, 2025—March 21, 2025[;] May 23, 2025[,] to the day now August 16, 2025[,] with no outside fresh air or sunlight.

(*Id.*, PageID.3.) Although the allegations were tailored to Evans, he styled the complaint as a "class action lawsuit[] on Kalamazoo County Jail for no fresh air." (*Id.*, PageID.4.) Nineteen other detainees, including Plaintiff, signed on to be a part of the "class action." (*Id.*) However, when the Court severed each Plaintiff's claims into separate lawsuits, each Plaintiff was directed to file an amended complaint.

Plaintiff's amended complaint does not solely focus on the lack of fresh air and sunlight at the Kalamazoo County Jail. In his amended complaint, Plaintiff alleges that on February 19, 2025, he was arrested by Defendants Cutler and Baldwin at the Mt. Zion Church in Kalamazoo. (Am. Compl., ECF No. 6, PageID.39.) Plaintiff was taken outside, where he was searched by Defendant Boglitsch and non-party Officer Emily Malcolm. (*Id.*) Plaintiff contends that they took his prescription eyeglasses, $270.00 in cash, a paper with phone numbers, and other property from his person. (*Id.*) According to Plaintiff, none of this property was described "as items/property to be seized when arrested [on the] warrant from Judge Hemingway." (*Id.*) Plaintiff also claims that none of these items "were put in [his] property at the jail[, nor] was [the] money put on [his] books." (*Id.*) Plaintiff was interrogated by non-parties Detectives Day and Seiser. (*Id.*) Plaintiff "[did not] deny being the suspect of the alleged crime and gave a detailed statement." (*Id.*)

Plaintiff was represented by an attorney from the Kalamazoo Defenders at his arraignment on February 20, 2025. (*Id.*) That attorney told Plaintiff that "someone would contact [him] from [their] office before [the] probable cause" conference scheduled for March 4, 2025. (*Id.*) According to Plaintiff, Kalamazoo Defenders scheduled "poly conference[s]" for February 26 and 27, 2025, "but no one came to either one." (*Id.*)

Plaintiff appeared for his probable cause hearing on March 4, 2025, at which time non-party attorney Jaime Nelson told Plaintiff that neither she nor anyone else from the Kalamazoo Defenders could represent Plaintiff because of a conflict of interest. (*Id.*) Plaintiff claims that he was forced to proceed *pro se* and that the probable cause hearing was adjourned despite his objection. (*Id.*)

On March 19, 2025, Plaintiff was denied access to the courtroom and forced to sit in a holding tank during the probable cause hearing. (*Id.*) On March 26, 2025, Plaintiff's preliminary

3

hearing was conducted. (*Id.*) Plaintiff claims that the MLive Media Group was there, despite not having Plaintiff's consent, and the hearing was open to the public. (*Id.*) Plaintiff "asked counsel to have the courtroom closed[; counsel] refused." (*Id.*) Plaintiff was bound over on the charges. (*Id.*)

Defendant Hutchins represented Plaintiff in one criminal case; Defendant Wagenaar represented Plaintiff on other criminal cases. (*Id.*) Plaintiff's pretrial conference was scheduled for April of 2025, but it was adjourned pending a competency/criminal responsibility hearing. (*Id.*) Defendants Hutchins and Wagenaar told Plaintiff that "all court dates would be on stay until competency/[criminal responsibility] came back." (*Id.*) Plaintiff was taken to Ann Arbor for psychiatric evaluations at the end of May of 2025. (*Id.*)

Plaintiff filed numerous motions requesting the return of his property and asked counsel to file similar motions as well. (*Id.*) Plaintiff's property was not returned to him. (*Id.*) On June 25, 2025, Defendant Hutchins "filed some kind of petition, it was titled a petition for [Plaintiff's] eyeglasses." (*Id.*, PageID.41.) Plaintiff believes it was "actually for less liability/bankruptcy." (*Id.*) A hearing on the petition was scheduled for July 9, 2025. (*Id.*) Plaintiff was brought to court despite being told previously that all court proceedings were on stay pending his competency determination. (*Id.*) Before leaving the jail, Defendant Caldwell "refused to notarize [an] affidavit for [Plaintiff's] defense." (*Id.*) Plaintiff claims that he stayed in the holding area for approximately three hours and never saw counsel or a judge. (*Id.*)

Plaintiff was taken to court again for another hearing on July 10, 2025, despite not having received notice of the hearing. (*Id.*) When he arrived at the courthouse, Plaintiff tried to give Defendant Hutchins "a notarized complaint, affidavit of defense [that the] notary refused to notarize, and proof of [his] incarceration." (*Id.*) Defendant Hutchins refused to give them to the judge and refused to get Plaintiff copies. (*Id.*) Plaintiff told Defendant Hutchins that he wanted to

4

proceed *pro se*; Defendant Hutchins "claim[ed] Judge Paul Bridensteil said to write him a letter about *pro se*" status. (*Id.*) When Plaintiff returned to the jail, he tried to have the affidavit notarized a second time to include with his letter to the judge. (*Id.*) "Despite not getting it back the same day [Plaintiff] still wrote the letter to the judge." (*Id.*) On July 13, 2025, non-party Sergeant Cattes told Plaintiff that staff had lost his affidavit. (*Id.*)

On July 17, 2025, Defendant Hutchins came to see Plaintiff and told him that a competency hearing was scheduled for the next day. (*Id.*) Defendant Hutchins asked Plaintiff if she could represent him for all of his cases because Defendant Wagenaar was on vacation. (*Id.*) Plaintiff "told her NO and that [he] no longer trusted her counsel." (*Id.*) Plaintiff also mentions that his glasses were brought to the jail around this time, and "somehow it was a[n] enhancement now included in [his] charges." (*Id.*)

On July 18, 2025, sheriffs came to take Plaintiff to court. (*Id.*) Plaintiff requested a recess to "talk to CMH to verify competency actually coming back." (*Id.*) Plaintiff "[did not] make it to court [because] CMH never verified." (*Id.*) Plaintiff claims that somehow Defendant Hutchins was given authority to make an appearance on his behalf in all of his cases, despite Plaintiff "telling her no the previous day and after client[-]attorney breakdown from neglect of duty." (*Id.*)

After these incidents, Plaintiff "wrote multiple letters to the judge for a hearing regarding property security and automatic stay." (*Id.*) Plaintiff also rewrote his affidavit of defense and sent it to the district court, along with "complaints for neglect of duty and contempt outside immediate presence, speedy trial and neglect[,] and also requesting [appellants] to turn over funds in trustee account and show proof by accounting to receive representing that [Plaintiff] received funds." (*Id.*, PageID.41–42.) Plaintiff assumes that "all of [his] mail made it to the clerk and was filed properly." (*Id.*, PageID.42.)

5

Plaintiff's sentencing for one of his cases was scheduled for August 11, 2025, but was adjourned "for reasons not known" to Plaintiff. (*Id.*) Plaintiff "previously requested damages for $20,000 in that case for multiple violations of [his] rights, actual, economic, punitive." (*Id.*)

Plaintiff claims that he has been incarcerated at the jail since February 19, 2025, and that "the 180 days for [his] speedy trial [ended on]" August 19, 2025. (*Id.*) Plaintiff claims that he still has not received a trial date. (*Id.*)

Plaintiff goes on to allege that MLive Medial Group "made false and defamatory statements about [him] that were complet[e]ly unrelated to litigation and made for no reason but to defame [Plaintiff's] character." (*Id.*) Plaintiff avers these statements have caused harm to his reputation and psychological damage to his family. (*Id.*) Plaintiff states that "[m]atters concerning private life are normally entirely private and have no general interest to the public or private disclosure." (*Id.*)

Plaintiff then states that on July 24, 2025, he was in B-South at the jail talking to another inmate when he passed out and hit his head. (*Id.*) Plaintiff's blood pressure was checked; the top number was 100. (*Id.*) Plaintiff did not see a doctor until August 19, 2025, at which time he was "given an EKG test." (*Id.*) "They attempted to draw blood[,] but no blood came out." (*Id.*)

Plaintiff was taken to court for a status conference on August 21, 2025, but was denied access to the courtroom. (*Id.*) Defendants Wagenaar and Hutchins "claim[ed] the judge says he is still waiting for criminal responsibility for his reason to deny [Plaintiff entry] into the courtroom." (*Id.*) Defendants Wagenaar and Hutchins asked Plaintiff if he still wanted to proceed *pro se*; Plaintiff "told them we could talk about it upstairs[,] but they then brought up criminal responsibility." (*Id.*)

6

On August 25, 2025, Plaintiff talked to Defendant Wagenaar "at length about conduct over the last couple months." (*Id.*) Plaintiff claims that non-parties Deputies Nichols and Block were present, and that everything was recorded on their body cameras. (*Id.*) Plaintiff was subsequently sentenced to five years in one of his cases. (*Id.*) Plaintiff alleges that he signed "[a]ppeal papers/application" before leaving the courtroom, but he was not given instructions and deadlines for an appeal. (*Id.*)

Plaintiff claims that despite being sentenced on August 25, 2025, he is still waiting to be transferred to the custody of the Michigan Department of Corrections (MDOC). (*Id.*) Plaintiff is also still waiting for the "contents of petition showing jurisdiction." (*Id.*)

Plaintiff mentions that the Department of Public Safety "took items not on warrant," and that the "black mask" listed on the warrant "is in property at [the] jail." (*Id.*)

Finally, Plaintiff claims that during his time at the Kalamazoo County Jail, he has had "little to no fresh air[,] no outside rec[reation]/sunlight[, and has been] forced to house in places that lacked basic sanitation." (*Id.*)

Plaintiff asks that the Court "allow [him] to claim/receive money damages for violations of [hi] constitutional rights and def[a]mation per se, slander, libel, intentional infliction of emotional distress, disregard for safety, malicious prosecution, false imprisonment, abuse of process, psychological damage to family, technical assault, conspiracy, neglect, deprivation of liberty, etc." (*Id.*, PageID.43.) Plaintiff also asks that his cousin, Janice Heightower, be his "special personal representative" and to have "her beneficiaries notified if they haven't been already." (*Id.*) Plaintiff also seeks to hold "police officers responsible for trespass . . . against [Plaintiff's] property [and] held liable for [their] conduct." (*Id.*) Finally, Plaintiff seeks a transfer to the custody of the MDOC. (*Id.*)

This is not the first time that Plaintiff has raised the majority of these claims. In his amended complaint in this action, Plaintiff references Case Nos. 1:25-cv-1095 and 1:25-cv-1135.[1] (*Id.*, PageID.38.) On September 16, 2025, the Court received from Plaintiff a complaint against the "People of the State of Michigan." *See* Compl., *Bradley v. People of the State of Michigan*, No. 1:25-cv-1095 (W.D. Mich.) (ECF No. 1). In that complaint, Plaintiff references, *inter alia*, the seizure of his eyeglasses as well as the alleged speedy trial violations.

On September 22, 2025, before Plaintiff filed the amended complaint in the instant lawsuit, the Court received from Plaintiff a complaint naming the Kalamazoo Department of Public Safety, Kalamazoo Public Defenders, Tyler Caldwell, Jeffrey S. Getting, MLive Media Group, Scott Wagenaar, and M. Zoe Hutchins as Defendants. *See* Compl., *Bradley v. Kalamazoo Dep't of Pub. Safety*, No. 1:25-cv-1135 (W.D. Mich.) (ECF No. 1). That complaint is identical to the amended complaint filed in the instant lawsuit with the exception of the following allegations: (1) Plaintiff is waiting to be transferred to MDOC custody and is waiting for the contents of a petition showing jurisdiction; (2) the Department of Public Safety took items not listed on the warrant and included a "black mask" with Plaintiff's property at the jail; and (3) Plaintiff has experienced a lack of fresh air, sunlight, outside recreation, and basic sanitation at the Kalamazoo County Jail. *See generally id.*

## II.     Duplicative Complaints

Because the instant amended complaint repeats many factual allegations and claims that Plaintiff is pursuing in Case No. 1:25-cv-1135, the Court must determine whether the complaint is duplicative, and therefore, frivolous or malicious. Plaintiffs generally have "no right to maintain

---

[1] Plaintiff filed both 1:25-cv-1095 and 1:25-cv-1135 under the name Keyland Tramell Zachary Bradley. However, on the envelope in which he mailed the amended complaint in the instant suit, he used the name Keyland Bradley in the return address. (Am. Compl., ECF No. 6, PageID.44.) Moreover, Plaintiff provides the same inmate number in all three cases.

8

two separate actions involving the same subject matter at the same time in the same court and against the same defendants." *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977). Accordingly, as part of its inherent power to administer its docket, a district court may dismiss a suit that is duplicative of another federal court suit. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *Adams v. Cal. Dep't of Health Serv.*, 487 F.3d 684, 688 (9th Cir. 2007); *Missouri v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 953–54 (8th Cir. 2001); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138–39 (2d Cir. 2000); *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997). The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the "comprehensive disposition of litigation," *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952), and to protect parties from "the vexation of concurrent litigation over the same subject matter." *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991).

Moreover, prisoners who bring civil actions *in forma pauperis* face additional constraints due to statutory barriers when bringing duplicative claims. *See, e.g.*, *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) (per curiam) ("[T]he court's power of dismissal in IFP cases under section 1915(d)[2] is broader than in other civil cases under the Federal Rules of Civil Procedure."). The PLRA commands that district courts "shall review . . . as soon as practicable . . . a complaint in which a prisoner seeks redress from a governmental entity or officer" and dismiss it if it "is frivolous, malicious, or fails to state a claim . . . ." 28 U.S.C. § 1915A.

The Sixth Circuit has not provided clear guidance as to the meaning of "malicious" in § 1915A(b)(1) or its analogues in § 1915(e)(2)(B) and 42 U.S.C. § 1997e(c)(2).[3] However, all of

---

[2] Prior to April 26, 1996, the provisions in § 1915(e)(2) were set forth at 28 U.S.C. § 1915(d).

[3] 28 U.S.C. § 1915A requires a court to screen prisoners complaints seeking redress from a governmental entity or officer. Section 1915(e) requires that a court dismiss an action, in whole or in part if it is malicious, where a plaintiff is proceeding *in forma pauperis*. In a related statute, 42 U.S.C. § 1997e(c) requires that a court dismiss an action, in whole or in part if it is malicious,

the circuits that have confronted the question to conclude that a "duplicative complaint is an abuse of the judicial process and is properly dismissed without prejudice as malicious" for prisoners suing governmental entities and those proceeding *in forma pauperis*. *Daker v. Ward*, 999 F.3d 1300, 1308 (11th Cir. 2021); *accord Day v. Toner*, 530 F. App'x 118, 121 (3d Cir. 2013) ("[A] complaint is malicious where it is abusive of the judicial process and merely repeats pending or previously litigated claims . . . ."); *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) ("[R]epetitious litigation of virtually identical causes of action may be dismissed under 28 U.S.C. § 1915(d) as malicious." (alteration in original)); *Aziz v. Burrows*, 976 F.2d 1158, 1158–59 (8th Cir. 1992) (confirming rule under former § 1915(d) that a district court may dismiss duplicative complaints as malicious); *Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995) (noting that dismissal without prejudice of an action under 28 U.S.C. § 1915 when the complaint "merely repeats pending or previously litigated claims," serves Congress' goal of limiting plaintiffs from filing "frivolous, malicious, or repetitive lawsuits" (citations omitted)); *McWilliams v. Colorado*, 121 F.3d 573, 574 (10th Cir. 1997) ("[R]epetitious litigation of virtually identical causes of action may be dismissed under § 1915 as frivolous or malicious." (quotation marks omitted, first alteration in original)); *Crisafi v. Holland*, 655 F.2d 1305, 1309 (D.C. Cir. 1981) (explaining that a complaint brought by a pauper "that merely repeats pending or previously litigated claims" is abusive and "[a] complaint plainly abusive of the judicial process is properly typed malicious"); *see also Hurst v. Counselman*, 436 F. App'x 58, 60–61 (3d Cir. 2011) (concluding that the plaintiff's duplicative action evinced an attempt to vex, injure or harass a defendant and was therefore properly dismissed as malicious); *Davis v. Bacon*, 234 F. App'x 872, 874 (10th Cir.

---

where a prisoner challenges prison conditions under federal law. Frequently, a prisoner who brings a civil rights case is subject to all three.

10

2007) (affirming dismissal of a complaint as frivolous and malicious because it "substantially mirror[ed] the prior complaint"); *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993) (concluding "it is 'malicious' for a pauper to file a lawsuit that duplicates allegations of another pending federal lawsuit" filed by the same plaintiff); *Van Meter v. Morgan*, 518 F.2d 366, 367 (8th Cir. 1975) (affirming the dismissal of a complaint as frivolous where the plaintiff proceeding with pauper status already had filed similar complaints, one of which was currently pending and "deal[t] with issues directly related, if not identical, to these herein").

This Court, therefore, concurs with the uniform practices of the circuits that have confronted this issue: a complaint brought by a prisoner proceeding *in forma pauperis* that repeats pending or previously litigated claims is properly dismissed without prejudice as malicious under the PLRA. Yet, several circuits have further indicated that a complaint need only be *substantially* similar to previous or pending claims for a court to dismiss the complaint as malicious. *See, e.g.*, *Davis*, 234 F. App'x at 874; *Van Meter*, 518 F.2d at 367. For example, notwithstanding permissive joinder under Rule 20(a)(2) of the Federal Rules of Civil Procedure, the Fifth Circuit permits dismissals for malice where a plaintiff brings a subsequent complaint against new defendants with claims arising out of the same transaction or occurrence as an earlier complaint. *See, e.g.*, *Bailey*, 846 F.2d at 1020, 1021 (affirming the district court's dismissal as malicious of an action alleging similar facts as an earlier action but against a new defendant). Clearly, even some partially duplicative complaints may abuse the judicial process, particularly where a court concludes that the plaintiff intends to vex, injure or harass a defendant.

An example illustrates the point. A prisoner-plaintiff proceeding with pauper status may bring, for example, Claims A, B, and C against a defendant in the first complaint. Suppose that only Claim A survives preliminary screening under 28 U.S.C. § 1915A, and the plaintiff therefore

11

avoids a strike under 28 U.S.C. § 1915(g). While the first action remains pending, suppose the plaintiff filed a new action with a complaint alleging Claims A, D, and E against the same defendant, and a third action with a complaint alleging Claims A, F, and G against the original defendant. Notwithstanding differences between the complaints, the presence of Claim A would permit all three actions to proceed beyond the preliminary screening required by the PLRA even if only Claim A survived in each, and the original defendant would face three separate actions with at least one duplicative claim in each.

Furthermore, absent the ability to dismiss without prejudice substantially similar complaints as malicious, a prisoner-plaintiff may circumvent the three-strikes provision of 28 U.S.C. § 1915(g). Whether inadvertent or deliberate, a plaintiff could be shielded from receiving strikes by appending any new claims he desires to bring and reasserting a previous claim that alleged facts sufficient to state a claim. Such a result would undermine Congress' objectives with the PLRA "to put in place economic incentives that would prompt prisoners to" proceed prudently. *See Hampton*, 106 F.3d at 1286.

Finally, a dismissal without prejudice of a substantially similar complaint would ensure that the plaintiff does not suffer gratuitous harm. *Cf. Strandlund v. Hawley*, 532 F.3d 741, 745–46 (8th Cir. 2008) (interpreting "gratuitous harm" in the context of remedying misjoinder). The plaintiff would remain able to refile a new complaint after eliminating the duplicative claims.

For all of the foregoing reasons, this Court concludes that partially duplicative complaints aimed at vexing, injuring, or harassing defendants abuse the judicial process, and, therefore, should be dismissed without prejudice as malicious pursuant to the PLRA.

Here, Plaintiff's amended complaint in the instant case is largely identical to his complaint in Case No. 1:25-cv-1135. In addition, the wrongs alleged in both cases are substantially the same.

Granted, the instant lawsuit was opened prior to Plaintiff initiating Case No. 1:25-cv-1135. However, as explained above, this suit was opened as a result of the Court directing that the claims of the twenty plaintiffs who filed the initial complaint be severed and that each plaintiff file an amended complaint in his respective case. The scant allegations asserted in the initial complaint pertained only to detainee Ray Evans and were devoid of any allegations pertaining to Plaintiff. Notably, Plaintiff initiated Case No. 1:25-cv-1135 on September 22, 2025, more than two weeks before the Court received Plaintiff's amended complaint in the instant suit. In light of that procedural history, although Case No. 1:25-cv-1135 chronologically was opened after the instant suit, common sense dictates that the complaint filed by Plaintiff in Case No. 1:25-cv-1135 should be treated as the first-filed suit. As a result, the Court concludes that Plaintiff's allegations in this case substantially duplicate the events alleged in Case No. 1:25-cv-1135 such that Plaintiff's instant amended complaint is duplicative and malicious.[4] The Court, therefore, will dismiss the amended complaint on that ground. The dismissal will be without prejudice to Plaintiff's first-filed claims in Case No. 1:25-cv-1135 and without prejudice to Plaintiff filing a new complaint raising any non-duplicative claims.

## **Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's amended complaint will be dismissed without prejudice as duplicative and malicious, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir.

---

[4] The fact that Plaintiff adds nonduplicative claims and new Defendants does not remediate his inclusion of the duplicative allegations.

1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed without prejudice, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

    A judgment consistent with this opinion will be entered.


Dated:   October 22, 2025                    /s/ Paul L. Maloney
                                                              Paul L. Maloney
                                                              United States District Judge